

June 13, 2024

Honorable Mitchell S. Goldberg
17614 U.S. Courthouse, Courtroom 17-A
601 Market Street
Philadelphia, PA 19106

 **BY ECF and EMAIL (Goldberg_Chambers@paed.uscourts.gov)**

>   **RE:**   *Garcia v. Polymer80, Inc. and Marcus Burney PP #816759, No. 2:24-cv-01949 (E.D. Pa.)*

Dear Judge Goldberg:

      This firm represents Defendant, Polymer80, Inc., in the above-captioned matter originally filed in the Court of Common Pleas for Philadelphia County and removed to the Eastern District of Pennsylvania on May 8, 2024. ECF No. 1 (Notice of Removal, 5/8/2024). Polymer80 offers this letter brief in the response to the issues raised by Plaintiffs, Hector Garcia and Roseann Morrison ("Plaintiffs"), in their letter dated June 3, 2024. Therein, Plaintiffs request remand to state court and the imposition of sanctions against Polymer80. This Court should deny the relief requested by Plaintiffs. On [INSERT], Plaintiffs filed their Complaint and, for the first time, finally articulated their allegations against Polymer80. Under precedent in the Third Circuit, the action is ripe for removal. *See Sikirica v. Nationwide Insurance Co.*, 416 F.3d 214, 223 (3d Cir. 2005) (holding that a complaint, not a writ of summons, constitutes the "initial pleading" for purposes of 28 U.S.C. § 1446(b)).

      Plaintiffs contend that Polymer80's decision to file the instant Notice of Removal was unreasonable in light of this Court's decision to remand the prior removal attempt in November 2023, when only a Writ of Summons had been filed. This position oversimplifies the procedural posture of the matter pending before this Court, and disregards the uncertainty about whether the original Notice of Removal had been premature. Moreover, this Court's prior remand order was not a final appealable order, and – if Polymer80's original removal attempt was premature under *Sikirica* – it is entirely appropriate for Polymer80 to pursue the instant Notice of Removal once Plaintiffs filed the "initial pleading" as defined under 28 U.S.C. § 1446. Moreover, since remand to state court last November, Plaintiffs' actions have strengthened Polymer80's suspicions that Defendant Burney was joined primarily to defeat removal. Because

Polymer80's original Notice of Removal was likely premature under *Sikirica*, this Court has the ability to reconsider any determinations it made previously on the issue of fraudulent joinder. To ask this Court to do so in light of additional circumstances, after Plaintiffs filed the "initial pleading," is not objectively unreasonable or behavior that warrants sanction.

**I.    This Court's November 2023 Order Did Not Decide the Threshold Issue of whether Defendant Polymer80's prior Notice of Appeal was Prematurely Filed.**

Contrary to Plaintiffs' suggestion, Polymer80's Notice of Removal does not ignore this Court's prior order or the issues concerning the forum defendant rule. Polymer80 filed the instant Notice once Plaintiffs' filed their complaint, in part, because the November 2023 Order did not specify whether the prior Notice of Removal was filed premature. In *Sikirica*, the Third Circuit held, "**a writ of summons alone can no longer be the 'initial pleading' that triggers the 30–day period for removal under the first paragraph of 28 U.S.C. § 1446(b)**." 416 F.3d at 223 (footnote omitted; emphasis added); *see, e.g., Peralta v. UGI Utils., Inc.*, No. 3:22-cv-2069, 2023 WL 2309769, at *1 (Mar. 1, 2023) ("This 'ruling [in *Sikirica*] has been interpreted in this District to mean that removal is not proper until a complaint has been served on the defendants.'").

Polymer80 filed the original Notice of Appeal in an abundance of caution, as federal courts strictly apply the 30-day statutory period under § 1446(b). Although *Sikirica* seemed to preclude a writ of summons being cited as the "initial pleading" triggering the 30-day period, Polymer80 recognized the holding may not be a *per se* rule. The *Sikirica* decision does not appear to prohibit a defendant from removing under § 1446(b)(3), where a writ of summons together with "other paper[s]" served by a plaintiff would provide notice that diversity jurisdiction exists. In removing the case in October 2023, Polymer80 raised this argument; however, this Court's order did not make a determination as to whether the original Notice of Removal was premature.

Whether Polymer80's original Notice of Appeal was premature is a threshold jurisdictional question. If the removal of Plaintiffs' writ of summon was premature under *Sikirica*, all other determinations in this Court's November 2023 Order remanding the case to state court are arguably *dicta*. Under § 1446, it must be determined from the "initial pleading" whether federal subject matter jurisdiction exists. *See McLaren v. UPS Store, Inc.*, 32 F.4th 232, 236 (3d Cir. Apr. 25, 2022) ("Defendants may remove civil actions from state court to federal court so long as the district court would have had subject-matter jurisdiction had the case been originally filed before it.").

In deciding to remand the matter back to state court, the first question to determine in November 2023 was whether the writ of summons provided adequate notice that federal jurisdiction existed. The forum defendant rule – and whether it applies in a given case is a procedural rule, not jurisdictional in nature. *See* 1441(b)(2) (explaining, where diversity is the sole basis for jurisdiction, "[a] civil action **otherwise removable** … may not be removed if any of the parties in interest properly joined and

served as defendants is a citizen of the State in which such action is brought.") (emphasis added). The forum defendant rule does not strip the Court of jurisdiction; however, the Court would lack subject matter jurisdiction if the "initial pleading" failed to establish the requirements for diversity jurisdiction. Thus, whether Polymer80's original Notice of Removal was premature would presuppose any other substantive determination.

Because the November 2023 Order does not expressly determine this jurisdictional issue, Polymer80 filed the instant Notice of Removal within the 30-day period after Plaintiffs filed their complaint in state court. *See Sikirica*, 416 F.3d at 223; *Peralta*, 2023 WL 2309769, at *1. If the prior removal effort was – in fact – premature, the current Notice of Removal was properly filed within 30-days of the "initial pleading" under § 1446(b) as interpreted by the Third Circuit. Therefore, in considering the current Notice, this Court has the latitude to reconsider whether the forum defendant rule should serve as an independent bar in this case.

## II. Valid and Reasonable Questions Exist as to whether Service upon Defendant Marcus Burney was Defective or Improperly Effectuated.

Contrary to Plaintiffs' letter, the instant Notice of Removal does not disregard the forum defendant rule. Polymer80 maintains that it should not pose an independent bar to removal for two reasons. First, Polymer80 asserts that the affidavit of service for Burney suffers from fatal defects under Pennsylvania law and, thus, Plaintiffs failed to serve Burney properly in state court. *See* 28 U.S.C. § 1441(b)(2) ("A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest **properly joined and served as defendants** is a citizen of the State in which such action is brought.") (emphasis added). Second, Polymer80 contends that the fraudulent joinder rule should apply, and that an evidentiary hearing should be conducted in order to reveal Plaintiffs' intent as to Defendant Burney.

<em><u>Affidavit of Service is Defective, Not Fake</u></em>

Plaintiffs claim that the Notice of Appeal categorizes the Affidavit serving "Lt. L. Hill" at the address of the Curran-Fromhold Correctional Facility (CFCF) (hereinafter "Hill Affidavit"). This is simply false. Rather, Polymer80 maintains that the Hill Affidavit is defective on its face under well-established Pennsylvania law. If defective, then Plaintiffs failed to effectuate service properly upon Burney and, under 28 U.S.C. § 1441(b)(2), Burney was not "**properly joined and served as [a] defendant[]**" and the forum defendant is inapplicable.

Under Pa. R. Civ. P. 402, service may be effectuated at a person's "residence" – or "place of lodging" – by delivering the papers to the "person in charge" or to the "manager." Specifically, Rule 402 delineates the requirements for the proper manner of service, including *where* and *to whom* service may be made.

(a) Original process may be served

    (1) by handing a copy to the defendant; or

    (2) by handing a copy

        (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or

        (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or

        (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa. R. Civ. P. 402(a). Furthermore, in Pennsylvania, "[a] return of service shall set forth the date, time, place and manner of service, **the identity of the person served and any other facts necessary for the court to determine whether proper service has been made**." Pa. R. Civ. P. 405(b).

The Hill Affidavit fails this standard under applicable Pennsylvania law; accordingly, Polymer80 contends that Burney was not "properly joined and served as [a] defendant" for purposes of the forum defendant rule. *See* 28 U.S.C. § 1441(b)(2). The Affidavit does not supply adequate "facts necessary for the court to determine whether proper service has been made" *upon Defendant Burney*.

First, Plaintiffs did not serve Defendant Burney directly, *even though* Plaintiffs' letter to this Court indicates that Burney was – in fact – incarcerated at the location where "Lt. L. Hill" was served, CFCF. The Pennsylvania Department of Correction website includes directions for serving incarcerated inmates *directly in-person*.

How to serve an inmate with legal documents?

To serve an inmate with court-related documents (such as custody papers) regardless of the document(s) being served on an inmate, **it can done by a sheriff, constable or process server.** At some of the Department of Corrections institutions, the local county Sheriff's Office already has a standing gate clearance with the prison and are able to come to the prison to serve an inmate. **A constable or process server has to contact the facility's superintendent's office first so gate clearance can be prepared to allow them access to the visiting room**.

Hon. Mitchell Goldberg
June 13, 2024
Page 5

*See* Pennsylvania Dept. of Corrections, Frequently Asked Questions (FAQ) (https://www.cor.pa.gov/Inmates/Pages/Frequently-Asked-Questions-(FAQ's).aspx) (Last visited June 13, 2024) (emphasis added). The website for the Pennsylvania Department of Corrections ("DOC") provides instructions for serving inmates, such as Defendant Burney. The DOC does not, at any point, specify that prison officials – whether it be the Warden or some other official – has the authority to accept service on behalf of prisoners. To the contrary, the DOC's website suggests that prisoners can be served directly with legal documents, so long as the process service or sheriff makes the appropriate arrangements. Plaintiffs could have followed these procedures, but they chose not to do so – that is, Plaintiffs did not serve Burney directly in-person, *despite having the ability to effectuate service upon Burney himself.*

Instead, Plaintiffs served an official named "Lt. L. Hill," and failed to include facts that identify this individual's authority to accept service for Defendant Burney. The Hill Affidavit does not identify or describe "Lt. L. Hill" or his role at the prison location. "Lt. L. Hill" is not the Warden of the facility and therefore not the "person in charge" of CFCF, nor is "Lt. L. Hill" a family member of Defendant Burney. Under Pa. R. Civ. P. 405(b), the Hill Affidavit must specify enough information that explains the authority of "Lt. L. Hill" at the location of service and his relationship with respect to Defendant Burney. *See Cintas Corp. v. Lee's Cleaning Services, Inc.*, 700 A.2d 915, 918 (Pa. 1997) (explaining that, on its face, the facts and information described in a return of service must establish that service was proper). The Hill Affidavit includes absolutely no facts that explain why "Lt. L. Hill" can be served in lieu of Defendant Burney. Even if the Warden of the prison would have authority to accept service for an inmate, the Hill Affidavit does not contain sufficient information to explain why serving the writ of summons on "Lt. L. Hill" is adequate to effectuate service upon Defendant Burney.

Second, the Hill Affidavit identifies the location of service as "7901 State Rd., Philadelphia, PA." It does not describe or name this location. Under Rules 402 and 405, this is a fatal defect. Rule 402 only allows service to be effectuated at certain locations: either "at the residence of the defendant" or "at any office or usual place of business of the defendant[.]" Pa. R. Civ. P. 402(a)(i)-(iii). The Hill Affidavit does not specify whether the address served was either Defendant Burney's "residence" or "office or usual place of business[,]" as required under Rule 402. Even if a prison constitutes a "residence" or "other place of lodging," the Affidavit fails to provide that description. Rather, it provides only the address and does not identify the location as a state prison where Burney was – at the time – incarcerated as an inmate.

Pennsylvania precedent indicates that the Hill Affidavit's facial defect in failing to identify the location of service is fatal and renders service upon Defendant Burney ineffective. *See Sharp v. Valley Forge Medical Ctr. and Heart Hosp., Inc.*, 221 A.2d 185, 187 (Pa. 1966) ("The rules relating to service of process **must be strictly followed**, and jurisdiction of the court over the person of the defendant is dependent upon proper service having been made[.]"(citing *McCall v. Gates*, 47 A.2d 211 (Pa. 1946)). In *Sharp*, the Supreme Court upheld an order striking a default judgment based upon a defect

appearing on the face of the return of service form. Specifically, the sheriff attempted to effectuate substitute service upon a defendant doctor *at his place of business*. The sheriff purported to hand deliver a copy of the complaint to defendant's "agent or to the person for the time being in charge[.]" *Sharp*, 221 A.2d at 186-87. For substitute service, the Rules of Civil Procedure allowed the sheriff to serve either of those individuals "at **any office or usual place of business of the defendant**[.]" *Id.* at 187 (citations omitted) (emphasis added). The return of service, however, described the location as defendant's "**place of employment**" – not defendant's "office" or "place of business" as permitted by the rules. *Id.* (internal quotations and citations omitted). "[T]he sheriff's return on its face," the *Sharp* Court determined, "discloses no service in conformity with the existing rules, [and] is, therefore, invalid[.]" *Id.* The Court reasoned that "the Procedural Rules make no provision for substituted service at a defendant's 'place of employment.'" *Id.* Based solely upon this facial defect in the return of service, the *Sharp* Court held the default judgment was properly stricken for defective service.

Under *Sharp*, the Hill Affidavit includes several fatal defects appearing on its face – most analogous being the Hill Affidavit's failure to identify the location served *at all*. It is not described as a residence, a place of business or – even – a prison. It contains only an address, and does not specify that it was either Burney's "residence" or "other place of lodging." Accordingly, Pennsylvania law deems this return of service defective for this basis alone.

The same reasoning applies equally to the other facial defects contained in the Hill Affidavit, as described above. It contains no facts whatsoever explaining why "Lt. L. Hill" can accept service for Defendant Burney. Both *Sharp* and Rule 405(b) require far more in order to serve Defendant Burney properly.[1] Therefore, under 28 U.S.C. § 1441(b)(2), Burney was not "**properly joined and served as [a] defendant[]**" and the forum defendant is inapplicable.

*Polymer80 Served Burney Directly and Obtained His Signature for Consent in Removal*

Unlike Plaintiffs, Polymer80 followed the directions on the DOC's website for serving an inmate with legal documents. Specifically, Polymer80 served Defendant Burney directly and obtained his signature for consent in removal. The process was not difficult or cumbersome, and refutes any suggestion that serving the writ of summons on a prison official is adequate service under Pennsylvania law.

Polymer80 notes that, in serving Defendant Burney in October 2023, it learned that Burney was no longer incarcerated at the FCFC where Plaintiff served "Lt. L. Hill." This raised additional questions and concerns about whether Burney as, in fact, present at the location where Plaintiff purported to effectuated service. With receipt of the

---

[1] Furthermore, the record indicates that Plaintiffs failed to serve Burney directly with the complaint, once it was filed. They simply mailed Burney a copy of the complaint, under the assumption that the Hill Affidavit effectuated initial process.

criminal history dates attached to Plaintiffs' letter, it appears Polymer80 was mistaken about Defendant Burney's whereabouts in August 2023. The criminal history indicates that Burney was at FCFC in August 2023, and that Plaintiff failed to serve him directly – despite serving "Lt. L. Hill" at the same location.

For all the foregoing reasons, it is not apparent on the face of the Hill Affidavit that Defendant Burney was, in fact, served properly with the Writ of Summons; and nothing in the record or indicates this service defect was cured before Polymer80 removed the action on May 8, 2024.

### III. Circumstances Indicate that Defendant Burney was Fraudulently Joined, and this Court should Conduct an Evidentiary Hearing on this Issue.

Under the Third Circuit's decision in *Sikirica*, Polymer80's original Notice of Removal was likely premature. This Court's November 2023 Order did not offer clear guidance on that question, but *Sikirica* held that a writ of summons – with minor exceptions, perhaps – cannot be considered an "initial pleading" for purposes of 1446. The November 2023 Order, which remanded the case to state court, is not considered a final appealable order. Thus, to the extent that Plaintiffs' newly-filed complaint constitutes the "initial pleading" that triggers the 30-day removal period, this Court has latitude to revisit any prior determination on the issue of fraudulent joinder. This Court, therefore, has the ability to alter its decision in light of evolving circumstances, as the litigation process has progressed further.

Polymer80 maintains that circumstantial evidence suggests that Plaintiffs added Burney as a defendant – primarily – in order to prevent removal to federal court. Defendant Burney has been convicted and sentenced to more then thirty (30) years for the shooting death of Sahmya Garcia. He has little or no financial means, and Plaintiffs are unlikely to vigorously pursue any monetary judgment entered against him. Polymer80, an out-of-state defendant with its principal place of business in Nevada, reiterates that it continues to be the only Defendant with any financial risk in this litigation. Polymer80 should not be denied access to a federal forum based upon the ostensibly fraudulent joinder of a defendant, who is unlikely to defend and – for all practical considerations – shoulders no financial risk.

As the litigation progressed on remand in state court, this became more evident. First, Plaintiffs sought pre-complaint discovery that was almost exclusively focused upon establishing a connection between Polymer80's products and the murder committed by Defendant Burney. The common pleas court denied the discovery requested, but Plaintiffs' strategy further revealed that Polymer80 is truly the focus of this lawsuit – not Defendant Burney. Second, in state court, Defendant Burney has made no effort whatsoever to defend the litigation. For example, during several discovery and status conferences held in the court of common pleas, only Polymer80 appeared. Likewise, it appears Plaintiffs have made virtually no efforts in pursuing the lawsuit against Burney; rather, Plaintiffs sole focus appears to be Polymer80.

This Court may not find these facts sufficient alone to determine that Burney was joined fraudulently in order to defeat removal; however, circumstances raise enough suspicions for this Court to schedule an evidentiary hearing on this question.

"The fraudulent joinder line of cases distills to a simple principle: a court cannot permit a plaintiff to join a straw-man defendant solely to deprive removal-eligible defendants of a federal forum to which they are otherwise entitled." Y*ellen v. Teledne Cont'l Motors, Inc*., 832 F. Supp. 2d 490, 503 (E.D. Pa. 2011) (citing *Brown v. JEVIC*, 575 F.3d 322 (3d Cir.2009)). The Third Circuit "has held that joinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006) (*quoting Abels v. State Farm Fire and Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985)) (emphasis added). And "[i]f the district court determines that the joinder was 'fraudulent' in this sense, the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" *Id*. (quoting *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999)).

Although the doctrine of fraudulent joinder applies in the classical example where plaintiff joins a defendant in order to destroy complete diversity, courts in the Third Circuit have applied the doctrine in the context of the forum defendant rule. *Yellen*, 832 F. Supp. 2d at 503 ("In like manner, we see no reason why a plaintiff should not be foreclosed from improperly invoking the forum defendant rule to shield itself from removal. Thus, the fraudulent joinder doctrine applies here."). "The removing party has a "heavy burden of persuasion" to prove that a plaintiff has fraudulently joined a party to destroy complete diversity." *Id*. (quoting *Boyer v. Snap-on Tools Corp*., 913 F.2d 108, 111 (3d Cir.1990) (citation omitted)).

"To meet this burden, a removing defendant may support its notice of removal with 'evidence outside the pleadings, including such supporting documents as affidavits and deposition transcripts, in defendant's attempt to satisfy its burden of establishing fraudulent joinder.'" *Id*. (citation omitted). In making this assessment, the Third Circuit allows for a "**limited piercing of allegations to discover fraudulent joinder.**" *Id*. (citing *Boyer*, 913 F.2d at 112) (emphasis added).

Plaintiffs harbor "no real intention in good faith to prosecute the action against [Defendant Burney] or seek a joint judgment.'" *See In re Briscoe*, 448 F.3d at 216. On the face of the civil coversheet and writ of summons, Defendant Burney resides within the state prison system. Materials served by Plaintiffs upon Polymer80 included Defendant Burney's prisoner number as well as case numbers, which establish Burney has been convicted and sentenced for third-degree murder and several related charges, with the sentences to be served consecutively over decades. *See Briscoe*, 448 F.3d at 219 ("[A] court can look to more than just the pleading allegations to identify indicia of

fraudulent joinder."); *Yellen*, 832 F. Supp. 2d at 503 (citing *Boyer*, 913 F.2d at 112). Given Defendant Burney's imprisonment and apparent lack of financial means, Plaintiffs likely have no intent – or inventive – to vigorously litigate this action against Burney and seek a monetary judgment. Plaintiffs joined Defendant Burney for one primary reason – in order to defeat federal jurisdiction through application of the forum defendant rule.

On the other hand, Polymer80 is an out-of-state corporate defendant with financial means. Polymer80 is the only defendant named in this lawsuit that Plaintiffs, for all practical purposes, intend to pursue. Polymer80 is the "deep pocket defendant" that serves as Plaintiffs true target. Courts in this District have previously held that such a factual scenario clearly indicated fraudulent joinder. S*ee, e.g., Doe No. 4 v. Soc'y for Creative Anachronism, Inc.*, No. CIV.A. 07-1439, 2007 WL 2155553, at *4 (E.D. Pa. July 25, 2007) (concluding that the purpose in joining a prisoner within the Pennsylvania state prison system was to destroy diversity, especially given the presence of a "'deep pocket' defendant").

Polymer80 maintains that Plaintiffs joined Defendant Burney to deprive Polymer80 of access to a federal forum – a forum of which Polymer80 could otherwise avail itself. At minimum, the circumstances here warrant this Court ordering a hearing to determine whether applying the fraudulent joinder doctrine is appropriate. Otherwise, an out-of-state defendant would be denied a federal forum solely because Plaintiffs named an Pennsylvania state prisoner as a co-defendant. This would be an absurd and inequitable result. It is precisely the scenario the fraudulent joinder doctrine was created to protect.

Plaintiffs' argument distorts the proper application of the forum-defendant rule. It is a rule designed to prevent an in-state defendant from removing a case commenced in state court, where the Plaintiff is an out-of-state resident. The theory underpinning this doctrine is that an in-state defendant is not asked to defend in an unfamiliar foreign state forum without access to federal court. Of course, in the instant matter, this is not the case. Polymer80 is a Nevada citizen that was sued in PA state court and – thus far – denied access to a federal forum for one reason: Plaintiffs joined an in-state prisoner as a defendant. Polymer80 should have the right to explore in an evidentiary hearing whether such a joinder was fraudulent – that is, whether Defendant Burney was joined, even in part, to defeat federal jurisdiction.

### IV. Sanctions are Not Appropriate because Many Issues Remain Open and Undecided.

Plaintiffs seek sanctions against Polymer80 for filing the instant notice of removal, claiming it was unreasonable on its face. This request is meritless. First, this Court's prior order does not determine whether the original notice of removal was premature – jurisdictional question. The Third Circuit's decision in *Sikirica* would suggest that the original Notice was premature, and that any other prior determinations

were *dicta* since the question of the "initial pleading" is a threshold issue. Under this circumstance, filing a notice of removal in response to Plaintiffs' Complaint is not unreasonable on its face.

Moreover, Polymer80 has two bases for why the forum defendant rule does not apply: (1) the Hill Affidavit is defective and thus Burney was not properly served; and (2) the fraudulent joinder doctrine applies. Although this Court's prior order addressed the issue of fraudulent joinder, it did so prior to a complaint being filed. Circumstances since remand to state court further indicate that Plaintiffs have little, if any, interest in pursuing their claim against Burney. At minimum, now that a complaint has been filed, Polymer80 should have the opportunity to explore this question at an evidentiary hearing before any decision on remand is made.

Finally, Plaintiffs do not seek sanctions under Rule 11; nor have they complied with the safe harbor provisions of Rule 11(c)(2). The statutory text for the sanctions sought are not characterized as "sanctions," but rather an award of fees and costs if this Court deems appropriate. While Polymer80 does not believe Plaintiffs have made a showing of entitlement to such an award, Polymer80 further objections at Plaintiffs' characterization of this fee provision as a "sanction."

## Conclusion

Polymer80 asks this Court to deny the relief requested by Plaintiffs. The outrage apparent from their letter brief is unwarranted. Polymer80 makes no claims that Defendant Burney should not be responsible for his crimes; or that Plaintiffs cannot pursue him in civil court. Polymer80 objects only to his inclusion in this lawsuit insofar as it is designed to prevent Polymer80 – an out of state Defendant with substantial financial risk – from access to a federal forum. This was not how the forum defendant rule was intended to operate.

Respectfully,

*/s/ Shawn M. Rodgers*
Shawn M. Rodgers

cc: All counsel of record